United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re MORTGAGE FUND '08 LLC,

Debtor.

_______________________________________/

SUSAN L. UECKER, in her capacity as Trustee of the Mortgage Fund '08 Liquidating Trust,

Appellant,

v.

A VERY NICE POOL COMPANY, LTD.,
Appellee.

Case No. 15-cv-00077-SI

Consolidated with 15-cv-00251 SI and 15-cv-00252 SI

**ORDER AFFIRMING BANKRUPTCY COURT AND DENYING MOTION FOR SANCTIONS**

Now before the Court are three consolidated appeals by appellant Susan L. Uecker, Liquidating Trustee of the Mortgage Fund '08 Liquidating Trust, from orders of the Bankruptcy Court for the Northern District of California dismissing three adversary proceedings filed by the Trustee. For the reasons set forth below, the Court AFFIRMS the Bankruptcy Court and DENIES appellees' motion for sanctions.

**BACKGROUND**

These consolidated appeals arise out of the bankruptcy of Mortgage Fund '08 ("MF08").[1]

[1] In an order filed March 31, 2015, the Court consolidated these appeals and designated 15-cv-251 SI as the lead case. However, the order granting consolidation contained the caption for 15-cv-77 SI. The parties have filed all of the briefs in 15-cv-77 SI, while the record from the bankruptcy court is contained in 15-cv-251 SI. This order resolves the consolidated appeals in the three cases and shall be filed in dockets of all three cases.

MF08 was formed in December 2007 as a Delaware limited liability company for the stated purpose of raising capital through the issuance of notes to investors and making loans secured by real estate with the funds raised. *See* Case No. 11-49803-RLE-11 (Bankruptcy Dkt. 101). In reality, MF08 was part of a fraudulent scheme perpetrated by Walter and Kelly Ng in which investors' money was funneled from MF08 to R.E. Loans LLC ("R.E. Loans"), another company that was also owned and controlled by the Ngs. R.E. Loans was an investment company that issued secured loans to real estate developers. The Ngs owned and managed The Mortgage Fund, LLC ("TMF"), which was MF08's sole owner, manager, and member. Bar-K, Inc., an affiliated entity owned by Kelly Ng and his brother Barney, served as MF08's loan servicer and broker.

Appellees A Very Nice Pool Company, Ltd. ("Pool"), Paul and Patricia Cianci ("Cianci"), and Mari DeMarsh[2] ("DeMarsh") invested money with R.E. Loans, and they withdrew their money in 2008. R.A. at UE 000050, UE000057, UE000064.[3]

On September 12, 2011, several investors of MF08 filed a Chapter 7 involuntary bankruptcy petition against MF08 in the Bankruptcy Court for the Northern District of California.[4] *See* Case No. 11-49803-RLE-11 (Bankruptcy Dkt. 1). On February 3, 2012, the Bankruptcy Court appointed appellee Susan L. Uecker as the Liquidating Trustee of the Mortgage Fund '08 Liquidating Trust ("Trustee") pursuant to a Liquidating Trust Agreement. (Bankruptcy Dkt. 101).

On September 9, 2013, the Trustee filed 17 complaints, all arising out of similar transactions. Among the complaints are these three cases, in which the Trustee alleged, *inter alia*, that appellees were investors in R.E. Loans and that at no time did any appellee invest any money in MF08. *Pool* Complaint ¶ 17 (R.A. at UE000050); *Cianci* Complaint ¶ 17 (R.A. at p. UE000057), *DeMarsh* Complaint ¶ 17 (R.A. at UE000064). The complaints alleged that funds

[2] Mari DeMarsh is the executor and trustee of the estate of Dr. Revels M. Clayton, in his capacity as former trustee for the Revels M. Cayton MD Inc. Pension Plan 2 ("the Plan"). The Plan was an investor in R.E. Loans.

[3] "R.A. at UE---" refers to the record filed by appellant, located at Dkt. 13 in 15-cv-77 SI.

[4] The Bankruptcy Court subsequently entered an order converting the case to one under Chapter 11 of the Bankruptcy Code. *See* Case No. 11-49803-RLE-11 (Bankruptcy Dkt. 11).

were transferred from MF08's account at Wells Fargo Bank to each of the appellees, and that the transfers were fraudulent. *Pool* Complaint ¶¶ 17-19 (R.A. UE000050), *Cianci* Complaint ¶¶ 17-19 (R.A. at UE000057), *DeMarsh* Complaint ¶¶ 17-19 (R.A. at UE000064). The complaints alleged two claims: (1) a claim to avoid transfer and recover the monies paid to appellees under Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07 on the grounds that they were paid with actual fraudulent intent to hinder, delay and defraud MF08's creditors; and (2) a claim to avoid transfer and recover those monies under Cal. Civ. Code §§ 3439.04(a)(2) and 3439.07 on the grounds that the monies paid to appellees was constructively fraudulent. *See id*.

On October 8, 2013, appellees Pool and Cianci answered the complaints, attaching as exhibits documents showing that the funds were transferred from TMF's bank account, not from MF08's. *Pool* Answer ¶ 17, Ex. A (R.A. UE000070, UE000078-79), *Cianci* Answer ¶ 17, Ex. A (R.A. at UE000082, UE000090-91). On November 8, 2013, appellee DeMarsh filed an answer which, *inter alia*, admitted that at certain times the Plan had invested money with R.E. Loans, LLC, and denied that the Plan received any money from MF08 or from a Wells Fargo account. (*DeMarsh* Answer ¶¶ 11, 17 (R.A. at UE000092-98, UE000095)).

On December 3, 2013, the Bankruptcy Court held an initial status conference in the 17 adversary proceedings filed by the Trustee. R.A. at Plan 000747-792 (transcript of Dec. 3, 2013 status conference).[5] During the conference, after noting that the Trustee wished to amend the complaints, the Bankruptcy Court inquired why the Trustee had filed complaints alleging that fraudulent transfers were made by MF08 to appellees when the record before the Bankruptcy Court showed that the payments had been made by TMF and not MF08. R.A. at Plan 000763-64. Specifically, the Bankruptcy Court noted that the Trustee's former counsel, Iain Macdonald, had filed a declaration on August 6, 2012, in a related adversary proceeding (*Uecker v. Kelly Ng et al.*, Case No. 11-49803-RLE-11; Adv. Proc. No. 12-04099-RLE), in which Mr. Macdonald outlined the "scheme" by which money was transferred from MF08 to R.E. Loans through TMF.[6] The

---

[5] "R.A. at Plan---" refers to the record filed by appellee DeMarsh, located at Dkt. 16 in 15-cv-77 SI.

[6] The Macdonald declaration is located at R.A. at UE000351-79. In his declaration, Mr.

United States District Court
Northern District of California

bankruptcy court stated,

> One of the things that it struck me as odd is the way the complaint was drafted, and it talks about the money coming from the Mortgage Fund '08 account to these people or to these defendants. And Mr. Brower [counsel for a number of the defendants] had no problem producing multiple documents showing that the funds appear to be coming out of the Mortgage Fund account. And I'm just curious why it is that your firm didn't have that information, because I've got a declaration from Mr. Macdonald of Macdonald Fernandez. This was filed in case number 11-49803. He signed this declaration on August 6, 2012, well after the settlement was reached, apparently in June of 2012. But he has his declaration going through as to what happened. He attaches a very detailed letter from Barney Ng's counsel to the managing members of R.E. Loans, LLC, outlining everything that went on, along with – that's Exhibit A. And then Exhibit B is a handwritten letter or what's purported to be a handwritten letter or statement from Mr. Ng, though it's not signed, basically accounting. And it attaches documents from R.E. Loans, Inc.
>
> I was just curious why it is that the trustee, who's been involved in this case so long, failed to realize where the money was actually coming from with regards to these defendants.

R.A. at Plan 000763-64.

The Bankruptcy Court and counsel for the Trustee and the adversary proceeding defendants (appellees here) then discussed the contents of Mr. Macdonald's declaration. Mr. Brower, counsel for appellees A Very Nice Pool Company and Paul and Patricia Cianci, stated,

> Mr. Brower: [I]f you look at the Iain Macdonald declaration in the exhibit following the Barney Ng note, you'll see that it is R.E. Loan's account record for the Mortgage Fund, LLC. And if you look down at, you'll see in pencil writing the names of my clients that are right on that document. . . . And what it shows is it shows that – and there's $4 million there if you look at – again, that's the missing $4 million. And if you look at that, you will see that – I look at my checks – every time there was a check from the Mortgage Fund, LLC to an R.E. Loans investor, it said, "Advance R.E. Loans" right on the check. And then the – the counter-balancing entry in the books with the purchase of my client's rights or interests by the Mortgage Fund. It says right on there: "Bought share" –
>
> The Court: Right. There's a distinction I want to point out that this isn't an issue where Mortgage Fund '08 upstreamed the money to R.E.L. who then used the money and then in exchange for that money allegedly transferred interest in real property back to Mortgage Fund '08 in order to pay down noteholders. There is a significant – I think it's over $4 million, where Mortgage Fund actually acquires the interest. It's – it – basically they were purchasing the R.E.L. noteholders' interest. So that's a different issue from, "Oh, the money went to R.E.L. and then R.E.L.

---

Macdonald stated, *inter alia*, that TMF was the manager of MF08; that the R.E. Loans ledger for TMF indicated that TMF had an "investment" in R.E. Loans in the amount of $4,231,740.37; that TMF was a vehicle for transferring funds from MF08 to R.E. Loans; and that "[e]ach transfer from Mortgage Fund LLC to RE Loans matches the corresponding payout to an individual noteholder of RE Loans." R.A. at UE000353.

> then used it to pay down the noteholders." This is where Mortgage Fund '08, and there's even correspondence, where I think one of the defendant says, "I need to get cashed out. Is someone willing [to buy] my interest"; and the next thing, Mortgage Fund ends up acquiring this gentleman's interest.

*Id*. at Plan 000765-67.

The Bankruptcy Court also noted that the defendants in the adversary proceedings contended that the Trustee's claims were covered and barred by the terms of a settlement that the Trustee had entered into with R.E. Loans in the separate R.E. Loans bankruptcy.[7] *Id*. at Plan 000752-53, 000757-59, 000767-72. The Bankruptcy Court noted that "there seems to be a serious issue of whether the compromise excludes these . . . defendants[,]" with the Trustee, on the one hand, taking the position that her claims in the adversary proceedings were not barred because the R.E. Loans settlement only released claims against R.E. Loans noteholders who received payments directly from R.E. Loans; and the adversary proceeding defendants, on the other hand, asserting that the Trustee's claims had been released because the R.E. Loans settlement waived all claims against R.E. Loans noteholders who received payments from R.E. Loans (whether directly or through another entity), and the release waived the protections of California Civil Code Section 1542. *See generally id*. The Bankruptcy Court inquired, "[i]f Ms. Uecker knew about this and when she negotiated the settlement in June of 2012 in Texas with the mediator, Judge Newsome, Retired, why didn't she specifically spell out the 17 individuals are not part of the settlement[?]" *Id*. at Plan 000768. The bankruptcy court noted that "[t]he pleadings are really sloppy," *id*. at Plan 000779, and then set a schedule for briefing the Trustee's motion to amend the complaints. *Id*. at Plan 000784.

On December 19, 2013, the Trustee sought leave to amend the complaints to allege that the

---

[7] On September 13, 2011, R.E. Loans filed a voluntary Chapter 11 case in the United States Bankruptcy Court, Northern District of Texas (Case No. 11-35865). On January 27, 2012, the Trustee filed a Proof of Claim for MF08 in the amount of $66,226,496 in the R.E. Loans bankruptcy. R.A. at UE000339-45. The Proof of Claim states that the basis for the claim is "Money had and received." *Id*. at UE000340. In 2012, the Trustee entered into a settlement agreement with R.E. Loans. *Id*. at UE000210-18. Under the settlement agreement, R.E. Loans agreed that MF08's Proof of Claim would be allowed as a general unsecured claim in exchange for MF08's release of all claims against holders of RE Loans' Exchange Notes who received payments from R.E. Loans. *Id*. at ¶¶ 1-4. The settlement agreement also provided that, with regard to the release of MF08's claims, MF08 expressly waived any and all rights under California Civil Code Section 1542. *Id*. ¶ 4.02.

funds were transferred by MF08 to TMF and then to appellees, as opposed to directly from MF08 to appellees as had been alleged in the original complaints. R.A. at UE000099-100, R.A. at UE000123-24, R.A. at UE000146-47. Appellees Pool and Cianci opposed the motions to amend and argued that leave to amend should be denied because the original complaints violated Rule 9011 and the Trustee did not have standing to bring the Complaints. R.A. at UE000179-81, R.A. at UE000185-87. Appellee DeMarsh also opposed amendment, arguing that the allegations in the complaint were made in bad faith in violation of Federal Rule of Civil Procedure 11, the proposed amendment was futile, the Trustee unduly delayed in seeking amendment, and that appellee DeMarsh was unduly prejudiced by the Trustee bringing the action near the end of the running of the statute of limitations. R.A. at UE000195–99.

A hearing on the Trustee's motions for leave to amend the complaints was set for January 23, 2014, and subsequently continued. *See* R.A. at UE000397. On August 5, 2014, the Bankruptcy Court held a status conference at which the court informed all parties that it intended to issue a tentative ruling granting the Trustee's motions for leave to amend on the condition that the Trustee pay the reasonable attorneys' fees and/or costs for each defendant who had opposed the Trustee's motions for leave to amend. *Id*. at UE000443. On August 12, 2014, the Bankruptcy Court entered the tentative ruling, which stated that if no objections were filed within 21 days of the date of the tentative ruling, it would become the court's final ruling. *Id*. at UE000407-12.

On September 2, 2014, the Trustee filed a timely objection to the tentative ruling. *Id*. at UE000453-58. On September 25, 2014, the Bankruptcy Court held a status conference and a hearing on the Trustee's motions to amend and objection to the tentative ruling. *Id*. at UE000466-91. At the September 25, 2014 hearing, the Bankruptcy Court granted the motions to amend as stated in the tentative ruling, and explained its reasoning as follows:

> Before the Court are nine motions for leave to amend brought by plaintiff under Rule 15, applicable here by Bankruptcy Rule 7015.9, 7015. Nine defendants filed oppositions to these motions. The original complaint alleged that the avoidable transfers have been made by MF '08 and the proposed first amended complaint attached to the declarations of Robert Retana in support of each motion alleged that the avoidable transfers were made by MF '08 to the Mortgage Fund, LLC and then to defendants using funds that can be traced to MF '08. The Rule 15 motions were filed after these nine defendants answered the original complaints and most of their answers attached documentary evidence that contradicted the essential allegations

of the original complaints. That is, the checks attached to the answer showed that the challenged transfers have been from MF, LLC, not from MF '08. With the exception of two wire transfers from defendants Cayton and Tishman. . . . .

The Rule 15 motions offered no explanation for the – for this inaccurate pleading. They only argue that the amendments are simply to ["]Make a helpful clarification in order to avoid confusion["]. The oppositions argue that plaintiff could have filed accurate complaints because she was aware of the facts regarding how these related entities conducted their business well before these complaints were filed.

* * *

After considering this record in the context of the MF '08 Chapter 11 case, the Court will make the tentative ruling final. The Court exercises its discretion to allow amendments and require the payment of reasonable attorney's fees and costs as outlined in the tentative ruling as a consideration into doing this.

[The Court then discussed the law regarding amendments to complaints, and cited four cases for the proposition that a court "may impose costs pursuant to Rule 15 as a condition for granting leave to amend in order to compensate the opposing party for additional costs incurred because the original pleading was faulty."]

Here we have no undue delay in light of the fact that the motions were filed promptly after the answers were filed. We also have no dilatory motive. What we have here is a contention that accurate complaints could have been filed in the first place and there is prejudice to the defendants in having had to respond to the original complaints pointing out the defect and respond to the motions for leave to amend when this should not have been necessary. The defendants assert that the trustee's drafting was careless at best or, if she was trying to plead around a substantive defense regarding initial and subsequent transferee status, her drafting was intentional, at worst. Defendants appear, perhaps understandably, offended by the fact that they had to point this out in their answers and pointed again in their oppositions to the motions for leave to amend.

However, it is true that if amendment is allowed, no extra discovery will be required since no substantive discovery has been done yet. It is also true that no trial date will be changed if an amendment is permitted. It is true that the issue regarding who was the initial transferee has always been there to some extent as has the issue regarding who was the transferor. It is also true that allowing amendment will not change the key witnesses will be or what the key documentary evidence will be. All these factors weigh against a finding of prejudice.

It is clear to the Court that leave to amend is appropriate and it would be abuse – it would abuse its discretion if it were to deny leave to amend. Nonetheless, the Court finds sufficient prejudice to support its exercise of discretion in imposing a reasonable condition on the leave to amend in the context of these adversary proceedings.

The Court is sympathetic to the defendants' sense of frustration for several reasons. While the Court is not basing its ruling on Rule 9011, it does in large part set the standard. Rule 9011(b)(3) provides that by presenting a pleading to the court, an attorney is certifying that to the best of the person's knowledge, information, and belief formed after inquiry, reasonable in the circumstances, the allegations or other factual contentions have evidentiary support.

United States District Court
Northern District of California

> First, it is not disputed that in January of 2012, MF '08 filed a proof of claim in the RE Loans Chapter 11 case in Texas, in which MF '08 stated, "Between December 4th, 2007 and February 4th, 2009, things[8] caused the aggregate sum of $60 million -- $66 million to be transferred from MF '08's bank accounts to RE Loans, the cash transfers.["]
>
> The cash transfers were made either directly to RE Loans, indirectly through MF or Bar K, or to the RE Loans' borrowers to enable such borrowers to service to repay loans extended to them by RE Loans[."]
>
> It is also undisputed that in June of 2012, the trustee entered into a settlement into the RE Loans case by which the proof of claim was allowed in exchange for her support of confirmation of the REL plan and the REL noteholders. These defendants were urged to support this plan and compromise, and did support it on the premise that, ["]all MF '08 avoidance actions["] would be released. In exchange they agreed to reduction in the allowed amount of their claims. At this point the Court sees no appropriate way for the trustee to distance herself from the statement in her own proof of claim, but the meaning of this release language will be resolved another day.
>
> Second, the trustee's former counsel, Iain Macdonald, filed a declaration in Adversary Proceeding Number 1204099, Uecker versus Kelly Ng, on August 6th, 2012, at docket number 32-1, in which he stated at page 3 that he had received information from Barney Ng, an insider, to the effect that, ["]The Mortgage Fund LLC was a vehicle for transferring funds from MF '08 to RE Loans and its monies belonged to MF 08["].
>
> The declaration goes on to state that the transfers from Mortgage Fund LLC to RE Loans matched corresponding payouts to individuals, RE Loans noteholders.
>
> Third, Mr. Brower's response to the tentative ruling describes a sequence of events that at least raises the inference that the trustee knew much earlier than she now contends, that she was made aware of the fact that money flowed in ways that contradict the allegations in the original complaints.
>
> All of this is enough to confirm that when the trustee filed these complaints in September of 2013 the allegations were incorrect and could have been stated correctly. Accordingly, the Court finds that requiring the trustee to pay the reasonable attorney's fees and costs for the seven represented defendants and the reasonable costs of the two pro se defendants is within the discretion accorded to the Ninth Circuit authority referred to above.

*Id.* at UE000472-79; *see also id.* at UE000512-18 (written orders granting motions for leave to amend). In the Bankruptcy Court's Order granting the Trustee's motions to amend, the Court gave the appellees a period of time to file and serve a declaration of the fees and costs sought and provided that a motion should be filed if the parties were unable to informally resolve the amount of fees and costs. *Id.* at UE000513.

[8] The transcript states "things" and it is unclear if this is a typographical error.

On September 26, 2014, appellee DeMarsh filed her attorney's declaration seeking $38,161.10 attorney's fees and costs pursuant to the court order. *Id.* at UE000492-511. On October 17, 2014, the Trustee filed an objection to DeMarsh's claimed fees. *Id.* at UE000533-49. On November 20, 2014, the Bankruptcy Court held a hearing on the Trustee's objection to DeMarsh's claimed fees. *Id.* at UE000652-63. The Bankruptcy Court conducted an *in camera* review of the billing statements provided by DeMarsh's attorney, and entered an order on December 3, 2014 approving fees and costs in a total amount of $36,011.10. *Id.* at UE000674-76. That order provided that if the Trustee did not pay DeMarsh's fees and costs within 14 days, the Bankruptcy Court would dismiss with prejudice the adversary proceeding upon request of the appellee. *Id.* at UE000676. The Trustee did not pay the fees, and on December 18, 2014, DeMarsh filed an Ex Parte Application for Entry of Order Dismissing Adversary Proceeding for Failing to Comply with a Court Order. *Id.* at UE000692-97. On December 19, 2014, the Bankruptcy Court entered an Order Dismissing Adversary Proceeding With Prejudice for Failing to Comply with Court Order. *Id.* at UE000705-06.

On October 15, 2014, the attorney representing appellees Pool and Cianci (and four other adversary proceeding defendants) filed declarations seeking a total of $16,000 in fees and costs for the six cases, with a pro rata allocation of $1,248 for Pool and $704 for Cianci. *Id.* at UE000519-26. On November 14, 2014, the Trustee filed an objection to Pool's and Cianci's claimed fees. *Id.* at UE000627-37. Based upon the papers submitted, the Bankruptcy Court found that appellees Cianci's and Pool's attorney's total request of $16,000 in fees was reasonable, and the court took no position on the pro rata allocation of fees of $1,248 to Pool and of $704 to Cianci. *Id.* at UE000669-72. The Trustee did not pay the fees and voluntarily dismissed those cases with prejudice. *Id.* at UE000682. On December 19, 2014, the bankruptcy court entered orders dismissing those cases with prejudice. *Id.* at UE000699-703.

On December 31, 2014, the Trustee filed these appeals. On appeal, the Trustee contends that the Bankruptcy Court abused its discretion by granting the Trustee's motions for leave to amend the complaint on the condition that the Trustee pay the appellees' reasonable fees and

United States District Court
Northern District of California

costs.[9] The Trustee also contends that the Bankruptcy Court erred by dismissing the *DeMarsh* complaint.

**LEGAL STANDARD**

The decision to grant leave to amend conditioned upon the imposition of costs is reviewed for abuse of discretion. *General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1513 (9th Cir. 1995). To determine whether a court has abused its discretion, "we first look to whether the trial court identified and applied the correct legal rule to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc). "Second, we look to whether the trial court's resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Id.*; *see also In re Tracht Gut, LLC*, 503 B.R. 804, 810 (9th Cir. B.A.P. 2014) (citing *Hinkson* and stating that "[a] bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal standard, or its factual findings are illogical, implausible or without support from evidence in the record.").

A decision to dismiss an action for failure to file an amended complaint in a timely manner is reviewed for an abuse of discretion. *Ordonez v. Johnson*, 254 F.3d 814, 815-16 (9th Cir. 2001) (per curiam).

The trial court’s decision may be affirmed on any ground supported by the record. *Atel Financial Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003).

///

///

[9] Although the Trustee states that each appeal also presents the question of whether the Bankruptcy Court erred in determining the specific amount of fees and costs to be paid in each case, the Trustee does not advance any argument challenging the Bankruptcy Court's fee assessments. In any event, the Court finds no error in the Bankruptcy Court's determination of the reasonable fees and costs to be paid in each case.

## DISCUSSION

**I The Trustee Did Not Waive the Right to Appeal *Cianci* and *A Very Nice Pool Co., Ltd.***

Appellees Paul and Patricia Cianci and A Very Nice Pool Company, Ltd., contend that the Trustee waived her right to appeal by requesting that the Bankruptcy Court dismiss the two cases with prejudice without expressly reserving her right to appeal. Appellees also seek sanctions against the Trustee for prosecuting frivolous appeals.

The Court finds that the Trustee did not waive her right to appeal by requesting the Bankruptcy Court to dismiss the cases with prejudice. The Ninth Circuit has "repeatedly recognized that voluntary dismissals with prejudice that produce an adverse final judgment may be appealed." *Ward v. Apple, Inc.*, 791 F.3d 1041, 1045 (9th Cir. 2015) (citing authority). "A voluntary dismissal with prejudice permits the appellate court to review the action of the district court that the plaintiff believes to be determinative of his claim—the action that caused him to dismiss his case." *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995).

Appellees do not address the Ninth Circuit authority holding that a party may appeal a voluntary dismissal with prejudice. Instead, appellees rely on inapposite case law addressing whether a party may appeal from a consent decree. *See, e.g., Pacific Railroad v. Ketchum*, 101 U.S. 289, 295 (1879) (holding Court had jurisdiction to review appeal from consent decree but "we cannot consider any errors that may be assigned which were in law waived by the consent"); *Luna v. Apfel*, 986 F. Supp. 275 (D.N.J. 1997) (analyzing appealability of consent judgment to remand case to Social Security Administration). Appellees argue that "[t]he orders of dismissal with prejudice are, functionally, consent judgments without an express reservation of the right to appeal." Cianci/Pool Brief at 1. However, in *Concha*, the Ninth Circuit distinguished between voluntary dismissals with prejudice and dismissals pursuant to a settlement, and clarified that while a plaintiff "may appeal from a voluntary dismissal with prejudice," a plaintiff may not "appeal from a joint stipulation to voluntary dismissal, entered unconditionally by the court pursuant to a settlement agreement." *Concha*, 62 F.3d at 1057. Here, the Trustee is appealing from voluntary dismissals with prejudice and is not seeking to appeal a dismissal pursuant to a settlement agreement or consent judgment.

Accordingly, the Court finds that the Trustee did not waive her right to appeal by requesting a voluntary dismissal with prejudice of the *Pool* and *Cianci* cases. Because the Court concludes that the Trustee did not waive her right to appeal, the Court concludes that the appeals are not frivolous and DENIES appellees' motion for sanctions.

**II. The Bankruptcy Court Did Not Abuse Its Discretion in Granting Leave to Amend Conditioned Upon Payment of Reasonable Fees and Costs**

The Trustee contends that the Bankruptcy Court abused its discretion by granting the Trustee's motions for leave to amend the complaint on the condition that the Trustee pay the appellees' reasonable fees and costs. The Trustee contends that the Bankruptcy Court applied an incorrect legal standard to find that appellees had suffered prejudice. The Trustee argues that because the Trustee sought to amend the complaints early in the litigation, granting the motions to amend unconditionally would not have resulted in any prejudice, such as the need to reopen discovery or causing a delay in the proceedings.

The Ninth Circuit has held that "a district court, in its discretion, may impose costs pursuant to Rule 15 as a condition of granting leave to amend in order to compensate the opposing party for additional costs incurred because the original pleading was faulty." *General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1514 (9th Cir. 1995) (citing *Firchau v. Diamond Nat'l Corp.*, 345 F.2d 269, 275 (9th Cir. 1965)); *see also Firchau*, 345 F.2d at 275 ("In the exercise of its discretion in acting upon such a motion the district court may, if it grants the motion, prescribe as a condition reasonable terms compensating appellee for any loss or expense occasioned by Firchau's failure to file adequate pleadings in the first instance.").

The Court concludes that the Bankruptcy Court did not abuse its discretion when it granted the Trustee's motions to amend the complaints conditioned upon the payment of reasonable fees and costs. First, the Bankruptcy Court identified the correct legal standard to evaluate the Trustee's motions to amend. RA at UE000472-79. Second, the Bankruptcy Court's application of that standard is well-reasoned and supported by the record. The Bankruptcy Court analyzed the *Foman v. Davis*, 371 U.S. 178 (1962), factors and concluded that it would be an abuse of discretion to deny leave to amend. *Id*. at UE000474-76. However, the Bankruptcy Court found

that the record supported conditioning leave to amend upon a payment of reasonable fees and costs because the adversary proceeding defendants had incurred "additional costs . . . because the original pleading was faulty." *Id.* at UE000475 (citing *General Signal Corp.*, 66 F.3d at 1514). The Bankruptcy Court found that when the Trustee filed the original complaints in September 2013, the allegations regarding how the money flowed were incorrect and the Trustee possessed information showing that the allegations were incorrect, including Mr. Macdonald's declaration in the *Uecker v. Kelly Ng* adversary proceeding, such that the Trustee could have stated the allegations correctly from the outset. *Id.* at UE000477-79. The Bankruptcy Court found that the Trustee had not explained why the allegations were incorrect, and that because the allegations were incorrect, appellees were required to point out the inaccuracies both in their answers and in opposing the motions to amend. *Id.* at UE000476. On this record, the Court cannot conclude that the Bankruptcy Court's findings "are illogical, implausible or without support from evidence in the record." *Hinkson*, 585 F.3d at 1251.

**III. The Bankruptcy Court Did Not Abuse Its Discretion by Dismissing the *DeMarsh* Case**

The Trustee also contends that the Bankruptcy Court erred by dismissing the *DeMarsh* case because at the time of dismissal "there was no motion attacking the pleading before the Bankruptcy Court," and "[d]ismissal is only proper where the plaintiff can prove no set of facts in support of the claim that would entitle him to relief." App. Opening Brief at 21 (internal citations omitted).

However, as appellee DeMarsh notes, the Bankruptcy Court did not dismiss the case for failure to state a claim. Instead, the Bankruptcy Court dismissed the case after the Trustee failed to comply with the Bankruptcy Court's order allowing her to file an amended complaint conditioned upon paying DeMarsh's fees and costs by a date certain.

The Court reviews the Bankruptcy Court's decision to dismiss the *DeMarsh* case for failure to comply with the court's order for an abuse of discretion. *Ordonez v. Johnson*, 254 F.3d 814, 815-16 (9th Cir. 2001) (per curiam). The Court finds there was no abuse of discretion. The Bankruptcy Court's December 3, 2014 order provided that if the Trustee did not pay DeMarsh's

United States District Court
Northern District of California

fees and costs within 14 days, the Bankruptcy Court would dismiss with prejudice the adversary proceeding upon request of the appellee. *Id.* at UE000676. The Trustee did not pay the fees, and on December 18, 2014, DeMarsh filed an Ex Parte Application for Entry of Order Dismissing Adversary Proceeding for Failing to Comply with a Court Order. *Id.* at UE000692-97. On December 19, 2014, the Bankruptcy Court entered an Order Dismissing Adversary Proceeding With Prejudice for Failing to Comply with Court Order. *Id.* at UE000705-06. Thus, the record demonstrates that the Trustee was on notice that the case would be dismissed with prejudice if the Trustee did not pay the fees within 14 days of the December 3, 2014 order.

**CONCLUSION**

For the reasons set forth above, the Court AFFIRMS the Bankruptcy Court's orders and DENIES the appellees' motion for sanctions.

**IT IS SO ORDERED**.

Dated: September 25, 2015

SUSAN ILLSTON
United States District Judge